IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

BOYD J. HARDEN,               )
            Plaintiff,         )
                               )
        v.                     )        CIVIL NO. 3:12cv512(HEH)
                               )
MICHAEL J. ASTRUE,            )
Commissioner of Social Security, )
            Defendant.         )
_____)

## REPORT AND RECOMMENDATION

Boyd J. Harden ("Plaintiff") is 52 years old and previously worked laying hardwood floors, as well as building and repairing railroad tracks. On February 6 and February 27, 2009, Plaintiff protectively applied for Social Security Disability ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act, claiming disability due to congestive heart failure, hypertension, arthritis and hepatitis, with an alleged onset date of May 22, 2006. Plaintiff's claim was presented to an ALJ, who denied Plaintiff's requests for benefits. The Appeals Council subsequently denied Plaintiff's request for review on June 8, 2012, making the ALJ's decision a final decision of the Commissioner of Social Security.

Plaintiff now challenges the weight that the ALJ assigned to Plaintiff's treating doctor's opinion. He further complains that the ALJ's assessment failed to consider all of his impairments, specifically hepatitis C and stage III chronic kidney disease, when the ALJ rendered his decision. Plaintiff seeks judicial review of the ALJ's decision in this Court pursuant to 42 U.S.C. § 405(g). The parties have submitted cross-motions for summary judgment, which

are now ripe for review.[1] Having reviewed the parties' submissions and the entire record in this case, the Court is now prepared to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, it is the Court's recommendation that Plaintiff's Motion for Summary Judgment and Motion to Remand (ECF Nos. 13-14) be DENIED; that Defendant's Motion for Summary Judgment (ECF No. 16) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I.    BACKGROUND

Plaintiff challenges whether the ALJ properly weighed the physicians' medical opinions and whether the ALJ properly considered all of Plaintiff's impairments. Therefore, Plaintiff's educational and work history, Plaintiff's medical history, consulting physician's opinions, Plaintiff's reported activities of daily living, non-treating physicians' opinions, Plaintiff's testimony and vocational expert's testimony are summarized below.

### A.    Education and Work History

Plaintiff is 52 years old and completed the ninth grade. (R. at 180, 319.) He last worked as a railroad mechanic, building and repairing railroad tracks, until 2004. (R. at 35, 241.) His job also included setting ballast and joints and driving spikes. (R. at 36.) Plaintiff previously worked as a warehouse worker and laying hardwood floors. (R. at 34, 266.) Plaintiff has no vocational training or military experience. (R. at 33-34.)

---

[1]    The administrative record in this case has been filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

B.    Medical Records

On April 29, 2006, Plaintiff went to the emergency room at Bon Secours Richmond Community Hospital, complaining of moderate abdominal pain of three weeks duration. (R. at 345.) He reported a history of hypertension and denied any chest pain. (R. at 345, 347.) There was no evidence of congestive heart failure. (R. at 360.) He was diagnosed with hypertension, cardiomegaly, abdominal pain and trichomoniasis, and was discharged in stable condition on the same day. (R. at 359-60.) Doctors prescribed Plaintiff with clonidine for his hypertension and Lasix, a diuretic. (R. at 360.)

On May 20, 2006, Plaintiff again visited the emergency room, complaining of shortness of breath, abdominal swelling and swollen legs. (R. at 370.) He denied chest pain, heaviness or tightness. (R. at 370.) His chest X-ray showed pulmonary edema and his blood pressure registered at 181/141. (R. at 370.) Plaintiff was admitted for new onset of congestive heart failure and accelerated hypertension. (R. at 370.) He admitted that he smoked about two packs of cigarettes per day, drank a six-pack of beer every two days and occasionally used crack cocaine. (R. at 370.) Plaintiff tested positive for cocaine upon admission. (R. at 372.)

On May 22, 2006, Plaintiff was transferred to a different hospital for further evaluation, where his blood pressure was "under much better control." (R. at 382.) Upon arrival, Plainitff received an adjustment of his medications, a cardiac catheterization and an echocardiogram. (R. at 382.) His catheterization showed no significant coronary artery disease, but indicated a dilated left ventricle and trivial aortic insufficiency. (R. at 382.) Walter Malloy, M.D., suggested that Plaintiff's congestive heart failure likely stemmed from uncontrolled hypertension and his drug use. (R. at 383.) Dr. Malloy recommended aggressive medical management to control his

condition and Plaintiff received substance abuse counseling. (R. at 383.) The hospital discharged Plaintiff on May 24, 2006. (R. at 382.)

On July 11, 2006, Damian Covington, M.D., examined the plaintiff as a new patient. (R. at 409.) Plaintiff complained of exertional shortness of breath and stated that he complied with his medication. (R. at 409.) Plaintiff reported that he smoked half a pack of cigarettes per day. (R. at 409.) His blood pressure measured at 140/100 and repeated at 132/90. (R. at 409). His heart rate and rhythm were normal and his lungs were clear. (R. at 409.)

On August 16, 2006, Dr. Covington conducted a follow-up appointment. (R. at 477.) Plaintiff continued to complain of shortness of breath. (R. at 477.) His heart exhibited a regular rhythm and rate. (R. at 477.) Plaintiff stated that he had not been completely compliant with his treatment plan, because he encountered difficulties affording the medication. (R. at 477.) Dr. Covington found that Plaintiff's hypertension was not optimally controlled due to Plaintiff's medication compliance issues. (R. at 477.) Dr. Covington refilled Plaintiff's prescriptions. (R. at 477.)

On September 18, 2006, Plaintiff visited Dr. Covington and Plaintiff stated that he noticed reduced swelling with medication. (R. at 476.) Plaintiff's lungs were clear; his heart rate and rhythm measured regular. (R. at 476.) His blood pressure was 130/80. (R. at 476.) Dr. Covington found that Plaintiff's congestive heart failure with hypertension appeared stable and continued Plaintiff's treatment regimen. (R. at 476.)

During Plaintiff's November 17, 2006 appointment, Plaintiff stated that his shortness of breath had not worsened and appeared stable, only occurring from time to time. (R. at 475.) Plaintiff denied headaches, swelling, cough or chest pain. (R. at 475.) His heart rate and rhythm

4

were regular and his lungs were clear. (R. at 475.) Dr. Covington stated that Plaintiff's congestive heart failure appeared stable. (R. at 475.)

During Plaintiff's appointment on December 18, 2006, Plaintiff relayed no complaints and denied any shortness of breath, chest pain or headaches. (R. at 474.) His heart exhibited a regular rate and his lungs were clear. (R. at 474.) Dr. Covington continued Plaintiff's treatment and completed a *Medical Report for General Relief and Medicaid* for Plaintiff. (R. at 503.) Dr. Covington reported that Plaintiff suffered from congestive heart failure since May 2006. (R. at 503.) Dr. Covington opined that Plaintiff's condition rendered Plaintiff unable to work or severely limited his capacity for self-support for thirty days since May 2006 and estimated that Plaintiff's congestive heart failure would limit Plaintiff's capacity for self-support for twelve months. (R. at 503.) Dr. Covington recommended that Plaintiff follow-up with a cardiologist. (R. at 503.)

On June 18, 2007, Plaintiff visited Dr. Covington and had no complaints. (R. at 473.) He denied any shortness of breath, headaches, chest pain or swelling. (R. at 473.) Dr. Covington continued Plaintiff on his medication. (R. at 473.) On July 12, 2007, Dr. Covington stated that Plaintiff was "doing well" overall and Plaintiff denied swelling. (R. at 472.) Dr. Covington noted that before the appointment, Plaintiff visited a cardiologist who recommended that Plaintiff undergo more testing. (R. at 472.) Plaintiff's heart rate was regular and his lungs were clear. (R. at 472.) Dr. Covington continued Plaintiff's medical regimen. (R. at 472.)

On July 26, 2007, Plaintiff underwent a Persantine Cardiolite test at MCV Hospitals & Physicians where his peak heart rate was 86 beats per minute and his peak blood pressure was 179/117. (R. at 494.) His resting ECG was normal. (R. at 494.) He reported no chest pain. (R.

at 494.) His stress tomographic myocardial perfusion imaging showed a dilated left ventricle and depressed left ventricle ejection fraction. (R. at 527-28.)

On September 6, 2007, Plaintiff visited Dr. Covington, seeking sample medication, because of difficulties affording his prescriptions. (R. at 471.) During the appointment, Plaintiff reported mild shortness of breath and swelling, which Plaintiff attributed to having stopped his medication for two weeks. (R. at 471.) His heart rate and rhythm were regular. (R. at 471.) Dr. Covington noted that Plaintiff's liver function tests returned reactive for hepatitis A and positive for hepatitis B antibodies, requiring a referral for further evaluation and treatment. (R. at 471.) Dr. Covington found that Plaintiff's congestive heart failure and hypertension worsened because of Plaintiff's noncompliance with his medications. (R. at 471.)

On October 30, 2007, Dr. Covington reported that Plaintiff's congestive heart failure remained relatively controlled by medication. (R. at 470.) His heart exhibited a regular rate and his lungs were clear. (R. at 470.) Dr. Covington continued Plaintiff's medication for the congestive heart failure. (R. at 470.) On November 30, 2007, Dr. Covington indicated that Plaintiff was "doing well" and Plaintiff denied chest pain. (R. at 469.) Plaintiff still experienced shortness of breath, but reported no swelling. (R. at 469.) His heart rate was regular and his lungs were clear. (R. at 469.) Dr. Covington found Plaintiff's congestive heart failure appeared stable and continued his treatment. (R. at 469.)

On February 5, 2008, Dr. Covington noted that Plaintiff was "doing well." (R. at 468.) Plaintiff complained of some stiffness in his right shoulder and left hip. (R. at 468.) His heart exhibited a regular rate and his lungs were clear. (R. at 468.) Dr. Covington continued his medication for hypertension and congestive heart failure, and also treated Plaintiff's hip with a steroid. (R. at 468.) On May 6, 2008, Plaintiff reported to Dr. Covington that the pain in his hip

had improved. (R. at 467.) Plaintiff's congestive heart failure remained stable. (R. at 467.) Dr. Covington referred him to a liver clinic for his hepatitis. (R. at 467.)

On July 18, 2008, Plaintiff was diagnosed with hepatitis C after molecular diagnostic testing at an internal medicine follow-up. (R. at 448.) Plaintiff reported no active complaints. (R. at 446.) His blood pressure measured elevated, but he stopped taking medication to treat hypertension. (R. at 446.)

During a September 9, 2008 follow-up appointment with Dr. Covington, Plaintiff appeared to being doing "overall well." (R. at 466.) Plaintiff reported that he experienced shortness of breath from time to time when walking, but no swelling. (R. at 466.) Plaintiff reported that he was interested in quitting smoking. (R. at 466.) Plaintiff visited a liver clinic for his hepatitis and awaited a biopsy. (R. at 466.) Plaintiff's heart rate and rhythm were regular, his lungs were clear and Dr. Covington continued Plaintiff's treatment regimen. (R. at 466.)

On September 12, 2008, Plaintiff visited Antonia Abbate, M.D., for an internal medicine follow-up. (R. at 444.) Plaintiff complained of shortness of breath after walking four blocks, requiring him to stop at times. (R. at 444.) Plaintiff gained weight since his last appointment. (R. at 444.) Plaintiff's respiratory evaluation showed normal chest expansion and respiratory effort, no accessory muscle use and his chest was clear to auscultation. (R. at 445.) His cardiac evaluation showed a regular rate and rhythm. (R. at 445.) Dr. Abbate assessed that Plaintiff suffered from stable Class II congestive heart failure and that Plaintiff's hypertension was poorly controlled. (R. at 445.)

On October 15, 2008, Plaintiff underwent an echocardiogram with Dr. Abbate. (R. at 520-22.) The exam showed a dilated, hypertrophied left ventricle with mildly reduced systolic function; a normal right ventricle; mild biatrial enlargement; a mildly thickened mitrial valve

with moderate regurgitation; a structurally normal tricuspid valve with moderate regurgitation; a structurally normal aortic valve with mild regurgitation; a structurally normal pulmonic valve; no pulmonic regurgitation; and mild pulmonary hypertension. (R. at 520-21.)

On November 2, 2008, Plaintiff visited the emergency room after injuring his hip. (R. at 482-84.) On December 22, 2008, Plaintiff returned to Dr. Covington where Plaintiff complained of hip pain from a fall that he experienced. (R. at 465.) His heart rate appeared regular and his lungs were clear. (R. at 465.) Dr. Covington prescribed Percocet for Plaintiff's hip pain and refilled Plaintiff's other medications. (R. at 465.)

On January 22, 2009, Plaintiff attended a follow-up appointment with Dr. Covington and stated that his hip felt much better and, overall, he was doing well. (R. at 463.) Plaintiff's other evaluations were unremarkable. (R. at 463.) Dr. Covington believed that Plaintiff's chronic hip pain was likely caused by arthritis and prescribed medication to Plaintiff. (R. at 463.) Dr. Covington continued Plaintiff's treatment regimen. (R. at 463.)

On February 25, 2009, Plaintiff underwent a liver biopsy. (R. at 507-08.) The biopsy showed chronic hepatitis with minimal portal fibrosis and clinical history of hepatitis C. (R. at 526.) On April 24, 2009, Plaintiff visited the emergency room three and a half weeks after "stubbing" his great right toe on his bed and experiencing moderate pain and swelling. (R. at 537-41.) He was diagnosed with a right foot avulsion fracture. (R. at 541.) On May 11, 2009, Plaintiff underwent pulmonary function testing which showed normal spirometry, lung volumes and flow-volume loop. (R. at 536.)

On July 10, 2009, Plaintiff visited James A. Arrowood, M.D., for an internal medicine appointment. (R. at 577.) Dr. Arrowood reported no new changes to Plaintiff's condition. (R. at 577.) Plaintiff complained of shortness of breath after walking four to five blocks and Plaintiff's

8

blood pressure measured at 138/84 mm Hg. (R. at 577-78.) He continued smoking cigarettes. (R. at 577.) Dr. Arrowood opined that Plaintiff's Class II congestive heart failure and hypertension were stable. (R. at 578.)

During Plaintiff's July 21, 2009 appointment with Dr. Covington, Plaintiff again complained of exertional shortness of breath, but had no additional complaints. (R. at 657.) Plaintiff denied any swelling. (R. at 657.) On October 21, 2009, Dr. Covington noted that Plaintiff was "doing well" overall, but Plaintiff's blood pressure was not optimal (150/90 mm Hg), because he had not taken his medication in about a month. (R. at 654.)

On April 29, 2010, Plaintiff underwent a CT guided kidney biopsy following a diagnosis of stage III chronic kidney disease with proteinuria, in addition to CHF, hepatitis C, hyperlipidemia and hypertension. (R. at 589, 594.) His stage III chronic kidney disease with proteinuria appeared related to his history of hypertension and hepatitis C. (R. at 591.) Plaintiff exhibited no lower extremity edema, chest pain or shortness of breath. (R. at 589.) The biopsy demonstrated minimal portal fibrosis despite Plaintiff's chronic hepatitis C. (R. at 591.) Plaintiff's hypertension was better controlled and his blood pressure measured at 179/98 mm Hg. (R. at 591, 597.) The histolic findings suggested glomerular disease due to long standing hypertension. (R. 599.) There was no evidence of hepatitis C-related primary glomerular disease. (R. at 599.) Plaintiff denied pain following the procedure. (R. at 601.) Patient was discharged on April 30, 2010. (R. at 609.)

On May 12, June 29 and October 4, 2010, Plaintiff, upon recommendation from Dr. Covington, saw Deborah Morris-Booker, R.N. (R. at 637-45). Ms. Morris-Booker reported that during all three visits, Plaintiff's hyperlipidemia, stage III chronic kidney disease and hepatitis C

remained "active." (R. at 637, 640, 643.) She described Plaintiff's congestive heart failure and hypertension as stable. (R. at 637, 640, 643.)

On November 12, 2010, Dr. Covington wrote a letter addressed "To Whom it May Concern," reporting that he treated Plaintiff since 2006. (R. at 646.) He stated that Plaintiff "has multiple comorbidities, including congestive heart failure, hypertension and hepatitis." (R. at 646.) Dr. Covington believed that Plaintiff's conditions "significantly limit[ed] his ability to work." (R. at 646.) In Dr. Covington's opinion, Plaintiff could not perform laborious or strenuous work involving exertion. (R. at 646.) Plaintiff could, however, perform non-strenuous or sedentary work not involving lifting or extended standing or walking. (R. at 646.)

C.      Non-treating State Agency Physicians

On September 6, 2006, Nancy Powell, M.D., examined Plaintiff at the state agency's request. (R. at 420-23.) Plaintiff's chief complaints were shortness of breath and headaches. (R. at 420-21.) Plaintiff walked from the waiting room to the examining room, sat and climbed on and off the exam table without difficulty. (R. at 422.) He went from supine to sitting without issue. (R. at 422.) He took off his shoes, bent from his waist while seated to retrieve his shoes from under the chair and put them on and tied them. (R. at 422.) Plaintiff executed finger-to-nose and heel-to-knee exercises without difficulty. (R. at 422.) He exhibited normal range of motion in his cervical and dorsolumbar spines, hips, knees and ankles. (R. at 422). The straight leg-raising test was normal in both the seated and supine positions. (R. at 422.) His motor strength was 5/5 in all extremities, as was his grip and pinch strength. (R. at 423.) His sensory examination was normal, and his reflexes in all extremities were 1/4. (R. at 423). Plaintiff's heart rate was regular and without murmur and he had no tenderness or edema. (R. at 423.)

Dr. Powell diagnosed Plaintiff with shortness of breath, congestive heart failure, headaches and hypertension. (R. at 423.) Dr. Powell opined that the Plaintiff could likely stand or walk about six hours in an eight-hour workday, sit without restrictions, lift twenty to fifty pounds occasionally and ten to twenty-five pounds frequently, and had no manipulative or environmental limitations. (R. at 423.) Dr. Powell determined that Plaintiff possibly suffered postural limitations with climbing due to his shortness of breath. (R. at 423.)

On September 12, 2006, James Wickham, M.D., an internal medicine specialist working for the state agency, reviewed the Plaintiff's file. (R. at 424-31.) Dr. Wickham found that the residuals from Plaintiff's congestive heart failure did not prevent Plaintiff from occasionally lifting and/or carrying twenty pounds, frequently lifting and/or carrying ten pounds, standing and/or walking and sitting about six hours each during an eight-hour workday. (R. at 426.) Dr. Wickham observed that Plaintiff's daily activities were not significantly limited in relation to his alleged symptoms, that treatment had been essentially routine and conservative, and that he did not require assistive devices to ambulate. (R. at 430.)

On January 26, 2007, Robert Chaplin, M.D., an internal medicine specialist working with the state agency, affirmed Dr. Wickham's September 12, 2006 assessment of Plaintiff's file. (R. at 437.) On February 2, 2010, David Williams, M.D., a physician working for the state agency, reviewed Plaintiff's medical file. (R. at 64-84.) Dr. Williams stated that Plaintiff was capable of light level work despite his congestive heart failure, ischemic heart disease, hypertension, disorders of the muscle, ligament, fascia and dysfunction of the major joints. (R. at 69, 79.) Dr. Williams opined that Plaintiff could occasionally lift and/or carry twenty pounds frequently, frequently carry ten pounds, occasionally perform postural activities and could stand and/or walk or sit with normal breaks for a total of about six hours each during an eight-hour workday. (R. at

80-81.) Plaintiff's push and pull capabilities were unlimited. (R. at 81.) Additionally, Plaintiff had no manipulative, visual, communicative or environmental limitations. (R. at 81.)

     D.     Plaintiff's Testimony

During a hearing on November 15, 2010, Plaintiff testified that he was fifty years old. (R. at 30-31.) He did not complete high school and never received any vocational training, nor did serve in the armed forces. (R. at 33-34.) Plaintiff last worked in 2004; his previous relevant work included laying hardwood floors and building and repairing railroad tracks. (R. at 34-35.) The railroad work involved setting ties, ballasts and joints and driving the spikes, all of which required significant physical activity. (R. at 36.) He worked at the railroad for forty hours each week. (R. at 36.)

Plaintiff admitted that he used crack cocaine, drank alcohol often and smoked for several years before his congestive heart failure in 2006. (R. at 37.) Plaintiff stated that Dr. Covington served as his primary physician and that Dr. Covington told Plaintiff that his high blood pressure caused his congestive heart failure. (R. at 37.) After Dr. Covington prescribed blood pressure medication for Plaintiff, he experienced no congestive heart failure incidents. (R. at 37-38.)

Plaintiff took public transportation to the hearing. (R. at 31-32.) He stated that he experienced breathing difficulties with physical activity. (R. at 38-39.) He felt out of breath for about ten minutes if he overexerted himself and, because of this shortness of breath, he could not walk and talk at the same time. (R. at 39-41.) However, Plaintiff could walk four blocks if he was alone and not talking. (R. at 41.) No medication relieved his shortness of breath. (R. at 41.) Plaintiff could stand and sit for about thirty minutes, but complained that bending and squatting caused him breathing problems. (R. at 41-42.) He could grip items tightly and manipulate objects if his hands were not swollen. (R. at 43.) His ankles also sometimes swelled. (R. at

12

47.)  He could not lift heavy weights or tote anything in his left hand, because he worried that

doing so would strain his heart.  (R. at 43.)

Plaintiff reported that he suffered from hepatitis and kidney failure. (R. at 46.)  He took

no medication for the kidney problems, but had a prescription for hepatitis medication and

needed more shots for that disease.  (R. at 46.)  He experienced no side effects from the

medication. (R. at 46-47.)

Plaintiff received food stamps, but did not receive worker's compensation.  (R. at 44.)

Plaintiff lived with a friend, who handled most of the cooking at the house.  (R. at 44.)  He did

not do laundry, but shopped for his own groceries.  (R. at 45.)  Plaintiff testified that he did not

have a good memory for remembering details, but could "pretty much" follow storylines on TV.

(R. at 43.)

E.      Function Report Questionnaires

On June 27, 2006, Plaintiff completed a Function Report questionnaire.  (R. at 226-34.)

He reported that he lived in an apartment with friends and spent his day taking medication and

sitting on his porch.  (R. at 227.)  He experienced shortness of breath when he dressed and

needed reminders to take him medications, but listed no other problems with personal care.  (R.

at 228-29.)  His condition did not affect his sleep.  (R. at 228.)  Plaintiff prepared his own food

daily, including sandwiches and complete meals with several courses, but did not perform any

household chores or yard work.  (R. at 229.)  He could pay bills, count change, handle a savings

account and use a checkbook.  (R. at 230.)  Plaintiff's hobbies included playing checkers, cards

and chess and watching TV, and he noted that he performed those activities "very well."  (R. at

231.)  He reported no issues getting along with authorities, family, friends, neighbors or others.

(R. at 232-33.)

Plaintiff noted that he shopped in stores for clothing and food, and could go out alone. (R. at 230.) His driver's license was suspended, so he walked or used public transportation. (R. at 232.) He could walk five blocks before needing to stop for ten to fifteen minutes. (R. at 232.) Plaintiff experienced shortness of breath that affected his ability to lift, squat, bend, stand, walk, kneel, talk and climb the stairs. (R. at 232.) He indicated that he could lift twenty-five pounds. (R. at 232.)

On March 12, 2009, Plaintiff completed a second Function Report questionnaire. (R. at 256-64.) He reported that he lived in an apartment with a friend and spent his days eating, sleeping and walking to the store. (R. at 257.) Plaintiff stated that he could no longer walk and talk or walk as quickly as he did before the onset of his condition. (R. at 258.) His arthritis keeps him from sleeping, but his medication made it difficult for him to wake up in the morning. (R. at 258.) Plaintiff's arthritis also affected his ability to dress, bathe, sometimes use the toilet or maintain his personal care, but did not affect his ability to shave, care for his hair or feed himself. (R. at 258.) Plaintiff's hip pain prevented him from performing house or yard work, except for sometimes washing the dishes. (R. at 260.) His condition affected his ability to lift, squat, bend, stand, walk, sit, kneel, talk, climb stairs and remember. (R. at 262.) Plaintiff prepared his own meals daily, but he sometimes forgot that the stove was on. (R. at 259.)

Plaintiff used public transportation and could go out by himself. (R. at 260.) He shopped in stores. (R. at 260.) Plaintiff watched television for four to five hours daily. (R. at 261.) He stated that he rarely socialized or visited family, friends or neighbors. (R. at 262.) Plaintiff's condition did not affect his ability to reach, hear, see, complete tasks, concentrate, understand, follow instructions, use his hands or get along with others. (R. at 262.) He indicated that he could lift approximately ten pounds and walk about four blocks before he needed to stop and rest

for about fifteen minutes due to shortness of breath and arthritis. (R. at 262.) Plaintiff started using a cane in November 2008. (R. at 263.)

F.     Daily Activities Questionnaire

On April 18, 2010, Plaintiff completed a Daily Activities Questionnaire. (R. at 293-97.) Plaintiff reported that he lived in an apartment with a friend. (R. at 293.) He could take care of his personal needs without help, but the only household chore he completed was washing dishes. (R. at 293-94.) Plaintiff shopped for groceries monthly and his roommate assisted to ensure that the food was low-sodium. (R. at 293.) He cooked breakfast and dinner for himself. (R. at 294.) He spent his days watching television. (R. at 294.) Plaintiff did not hold a valid driver's license and he received food stamps. (R. at 295.) He used public transportation without assistance. (R. at 295.) Plaintiff slept seven hours per night and napped three times daily because of his medication. (R. at 296.)

G.     Vocational Expert Testimony

An impartial Vocational Expert ("VE") testified during the hearing on November 15, 2010. (R. at 49.) The VE asserted that Plaintiff's work as a hardwood floor layer constituted medium exertional level, skilled labor, while his work with the railroad was heavy exertional level, semi-skilled labor. (R. at 50-51.) The ALJ asked the VE if jobs existed in the national economy for a hypothetical individual with the plaintiff's vocational profile, and who could specifically (1) lift twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk and sit with normal breaks for a total of about six hours each during an eight-hour work day; (3) push and pull, including operating hand and foot controls; (4) perform occasional postural activities. (R. at 52.) The VE advised that the person could work a number of unskilled light

jobs, including cashier, with 1.72 million jobs in the national economy, and mail clerk, with 132,000 jobs. (R. at 54-55.)

## II. PROCEDURAL HISTORY

Plaintiff filed an application for SSD on February 6, 2009, and an application for SSI on February 27, 2009, alleging an onset date of May 22, 2006. (R. at 8.) The claims were initially denied on May 18, 2009, and again denied on February 4, 2010. (R. at 8.) Plaintiff filed a written request for a hearing on March 11, 2010. (R. at 8.) Plaintiff appeared with counsel and testified at a hearing before ALJ Thomas B. Pender on November 15, 2010. (R. at 23.) On December 3, 2010, the ALJ issued a decision denying Plaintiff's claims. (R. at 5-16.) On June 8, 2012, the Appeals Council denied the Plaintiff's request for review of the ALJ's decision, rendering it the Commissioner's final decision. (R. at 1-3.) Plaintiff then filed a motion for summary judgment, or in the alternative, motion for remand the case for further proceedings, in the United States District Court for the Eastern District of Virginia. (ECF Nos. 13-14.)

## III. QUESTIONS PRESENTED

1. Was the weight that the ALJ assigned to Plaintiff's treating physician's opinion supported by substantial evidence in the record and the application of the correct legal standard?

2. Did the ALJ err by failing to consider all of Plaintiff's impairments?

## IV. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citing *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). Substantial evidence is more than a scintilla, less than a preponderance and is the

kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. *Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citations omitted).

To determine whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ].'" *Hancock*, 667 F.3d at 472 (quoting *Johnson*, 434 F.3d at 653). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact — if the findings are supported by substantial evidence — are conclusive and must be affirmed regardless of whether the reviewing court disagrees with such findings. *Hancock*, 667 F.3d at 477 (citation omitted). If the ALJ's determination is not supported by substantial evidence on the record or if the ALJ has made an error of law, the Court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; *Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2000). The analysis is conducted for the Commissioner by the ALJ and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity"

("SGA").[2] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. *Id.* If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); *see also* 20 C.F.R. § 404.1520(c). To qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c).

At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to his past relevant work[3] based on an assessment of the claimant's residual functioning capacity ("RFC")[4] and the "physical and

---

[2]      SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

[3]      Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[4]      RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work

mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. *Id.* The burden of proof remains with the claimant through step four of the analysis, such that he must prove that his limitations preclude him from past relevant work. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hancock*, 667 F.3d at 472 (citation omitted).

However, if the claimant cannot perform his past work, the burden then shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); *Hancock*, 667 F.3d at 472-73; *Powers v. Apfel*, 207 F.3d 431, 436 (7th Cir. 2000) (citing *Yuckert*, 482 U.S. at 146, n.5). The Commissioner can carry his burden in the final step with the testimony of a Vocational Expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all of the claimant's impairments, so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents all of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Id.* If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

---

schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.* (footnote omitted).

## V.    ANALYSIS

A.    The ALJ's Opinion

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since May 24, 2010, the amended alleged onset date. (R. at 10.) At step two, the ALJ determined that Plaintiff was severely impaired from hypertension and residuals of congestive heart failure. (R. at 10.) At step three, the ALJ concluded that Plaintiff's impairments did not meet the criteria of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1. (R. at 12.) The ALJ then determined that Plaintiff had the RFC to perform the full range of light work as set forth in 20 C.F.R. 404.1567(b) and 416.97(b). (R. at 12.) At step four, the ALJ determined that the Plaintiff was unable to perform his past relevant work. (R. at 15.) At step five, the ALJ determined that jobs exist in significant numbers in the national economy that the Plaintiff could perform. (R. at 15.)

Plaintiff now argues that Defendant erred by failing to give Plaintiff's treating physician's opinion controlling weight as required by the treating physician rule. (Pl.'s Mem. in Supp. of Mot. for Summ. Judg. "Pl.'s Mem" (ECF No. 15) at 8-9.) Further, Plaintiff contends that the ALJ failed to consider Plaintiff's kidney disease and hepitatis C in determining Plaintiff's RFC and, therefore, these conditions were not included in the hypotheticals posed to the VE. (Pl.'s Mem. at 9-10.)

B.    The ALJ did not err in assigning Plaintiff's treating physician's opinion less than controlling weight.

Plaintiff argues that the ALJ disregarded the opinion of the long-term treating physician, Dr. Covington, and, therefore, failed to follow the treating physician rule. (R. at 8.) Thus, Plaintiff argues that the ALJ erred when he gave weight to a non-examining physician who lacked all pertinent records. (R. at 9.) Defendant maintains that the ALJ did not, in fact,

disregard the treating physician's opinion and that substantial evidence supported assigning Plaintiff's treating physician's opinion less than controlling weight. (Def.'s Mem. in Supp. of Summ. Judg. "Def.'s Mem." (ECF No. 16) at 20-24.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that have been ordered. *See* 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the Plaintiff's treating physician(s), consultative examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. *See* 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d).

Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Craig*, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, *e.g.,* when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well supported. 20 C.F.R. § 404.1527(d)(3)-(4), (e);

*Jarrells v. Barnhart,* No. 7:04cv411, 2005 U.S. Dist. LEXIS 7459, at *9-10 (W.D. Va. Apr. 26, 2005).

In December 2006, Dr. Covington reported that Plaintiff suffered from congestive heart failure since May 2006. (R. at 503.) Dr. Covington maintained that the diagnosis rendered Plaintiff unable to work or severely limited his capacity for self-support for thirty days since May 2006 and believed that Plaintiff's congestive heart failure would limit Plaintiff's capacity for self-support for twelve months. (R. at 503.) On November 12, 2010, Dr. Covington wrote that Plaintiff "has multiple comorbidities, including congestive heart failure, hypertension, and hepatitis." (R. at 646.) Dr. Covington further believed that Plaintiff's conditions "significantly limit[ed] his ability to work." (R. at 646.) In Dr. Covington's opinion, Plaintiff could not perform laborious or strenuous work involving exertion. (R. at 646.) Plaintiff could, however, perform non-strenuous or sedentary work not involving lifting or extended standing or walking. (R. at 646.)

While the ALJ must generally give more weight to a treating physician's opinion, "circuit precedent does not require that a treating physician's testimony 'be given controlling weight.'" *Craig,* 76 F.3d at 590 (quoting *Hunter v. Sullivan,* 993 F.2d 31, 35 (4th Cir. 1992)). Since its decision in *Hunter,* the Fourth Circuit has consistently held that, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Mastro,* 270 F.3d at 178 (citing *Craig,* 76 F.3d at 590); *see also* 20 C.F.R. § 416.927(d)(2).

In his decision, the ALJ assigned Dr. Covington's opinions about Plaintiff's functional capabilities "little weight," because Dr. Covington's opinion did not define laborious, strenuous, sedentary or non-strenuous work and was inconsistent with the generally normal objective

22

findings.[5] (R. at 14.) Instead, the ALJ gave more weight to the 2006 opinion of the state agency medical consultants, because that is when Plaintiff's symptoms were at their worst. (R. at 15.) The ALJ afforded no weight to 2010 opinions of the state agency medical consultants. (R. at 15.)[6]

Plaintiff argues that Dr. Covington limited Plaintiff to sedentary work and thus he should be found disabled. (R. at 9.) However, Dr. Covington's finding was not supported by evidence in the record. In many instances, Dr. Covington noted that Plaintiff's condition was stable. (R. at 445, 467, 469, 475-76, 578, 637, 640, 643.) Plaintiff denied any shortness of breath on several occasions. (R. at 473-74.) Further, during many appointments, Plaintiff did not suffer from any swelling. (R. at 466, 469, 472-73, 475, 646.)

Dr. Powell opined that the Plaintiff could stand or walk about six hours during an eight-hour workday, sit without restrictions, lift twenty to fifty pounds occasionally and ten to twenty-five pounds frequently, and had no manipulative or environmental limitations. (R. at 423.) During the appointment, Plaintiff walked from the waiting room to the examining room, sat and climbed on and off the exam table without difficulty. (R. at 422.) He went from supine to sitting without issue. (R. at 422.) Also in 2006, Dr. Wickham found that Plaintiff's condition did not prevent him from occasionally lifting and/or carrying twenty pounds, frequently lifting and/or carrying ten pounds, standing and/or walking and sitting about six hours each during an eight-hour workday. (R. at 426.) Further, Plaintiff himself wrote in his functioning report that he

---

5    Plaintiff argues that the ALJ disregarded Dr. Covington's opinion. However, the ALJ's opinion clearly considered this information as demonstrated by the ALJ assigning weight to the opinion. (R. at 14.) Throughout the opinion, the ALJ referenced Dr. Covington's opinion as the treating physician, showing a lack of disregard. (R. at 11-15.)

6    While Plaintiff further argues that Dr. Williams' 2010 opinion was incorrectly considered because it did not contain all of Plaintiff's medical records, the ALJ explicitly stated that such opinion was afforded no weight. (R. at 15.)

could lift twenty-five pounds and his condition did not affect his ability to reach. (R. at 232.) He also claimed that he could walk a few blocks. (R. at 262.)

If a medical opinion is not assigned controlling weight by the ALJ, then the ALJ assesses the weight of the opinion by considering: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area in which an opinion is rendered; and (6) other factors brought to the Commissioner's attention which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(6); *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006). Because Dr. Covington was Plaintiff's treating physician, factors one, two and five favor his opinions. However, as explained above, Dr. Covington's opinions were not supported by relevant evidence or consistent with the record as a whole. Thus, the substantial evidence in the record did not support Dr. Covington's opinions, and the assignment of little, rather than controlling, weight to her opinions was not in error.

      C.      The ALJ properly considered all of Plaintiff's impairments in assessing Plaintiff's RFC.

Plaintiff argues that the ALJ neglected Plaintiff's hepatitis C and kidney disease when determining his RFC. (Pl.'s Mem. at 10.) Further, Plaintiff argues that the ALJ failed to include those impairments in the hypotheticals posed to the VE. (Pl.'s Mem. at 10.) Defendant contends that the ALJ did consider Plaintiff's hepatitis and kidney failure and, therefore, correctly determined Plaintiff's RFC. (Def.'s Mem. at 24.) Further, because the RFC includes all of Plaintiff's impairments, the hypotheticals were correctly formulated. (Def.'s Mem. at 25.)

When determining a claimant's RFC, all impairments should be considered. 20 C.F.R. 404.1545(a)(2). While Plaintiff argues that the ALJ failed to consider Plaintiff's hepatitis C and kidney disease when determining Plaintiff's RFC, such a statement is incorrect. Indeed, in assessing Plaintiff's RFC, the ALJ considered all of the Plaintiff's medical history. Specifically, the ALJ considered Plaintiff's congestive heart failure and hypertension, as well as Plaintiff's hepatitis C and kidney disease. (R. at 11-13.) The ALJ found that Plaintiff's kidney disease and hepatitis C were not severe. (R. at 12.) The ALJ questioned Plaintiff about his hepatitis C and kidney failure during the hearing. (R. at 46.) Further, the ALJ stated in his opinion that Plaintiff took medications for his hepatitis C, but not for his kidney disease. (R. at 13.)

After considering all of Plaintiff's impairments, including his kidney disease and hepatitis C, the ALJ determined that Plaintiff had the RFC to perform the full range of light work under 20 C.F.R. 404.1567(b) and 416.967(b). (R. at 12.) 20 C.F.R. 404.1567(b) defines light work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. 404.1567(b), 416.967(b). Further, light work "requires a good deal of walking or standing, or . . . involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. 404.1567(b), 416.967(b). Substantial evidence in the record supports the ALJ's finding that Plaintiff's RFC allowed Plaintiff to perform light work, because the ALJ properly considered Plaintiff's impairment when determining Plaintiff's RFC.

In 2006, Dr. Powell opined that the Plaintiff could likely stand or walk about six hours during an eight-hour workday, sit without restrictions, lift twenty to fifty pounds occasionally and ten to twenty-five pounds frequently and had no manipulative or environmental limitations. (R. at 423.) Dr. Powell determined that Plaintiff possibly suffered postural limitations with climbing due to his shortness of breath. (R. at 423.) Also in 2006, Dr. Wickham found that the

residuals from Plaintiff's congestive heart failure did not prevent Plaintiff from occasionally lifting and/or carrying twenty pounds, frequently lifting and/or carrying ten pounds, standing and/or walking and sitting about six hours each during an eight-hour workday. (R. at 426.) Dr. Wickham observed that Plaintiff's treatment had been essentially routine and conservative and that he did not require assistive devices to ambulate. (R. at 430.) Dr. Chaplin affirmed Dr. Wickham's September 12, 2006 assessment of Plaintiff's file. (R. at 437.) In Plaintiff's functioning report, he indicated that he could lift twenty-five pounds and his condition did not affect his ability to reach. (R. at 232.) Therefore, substantial evidence supports the ALJ's determination of Plaintiff's RFC.

Plaintiff further argues that the ALJ incorrectly failed to include Plaintiff's hepatitis C and kidney failure when posing hypotheticals to the VE. (Pl's Mem. at 10.) However, because substantial evidence supports Plaintiff's RFC and the RFC properly included Plaintiff's ailments, the hypotheticals were properly formulated by correctly addressing Plaintiff's RFC. At the fifth step of the sequential analysis, the Commissioner must show that, considering the claimant's age, education, work experience and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f). The Commissioner can carry his burden in the final step with the testimony of a VE. As noted earlier, when a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence in the record and a fair description of all of the claimant's impairments, so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents all of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." *Id.*

26

In this case, the ALJ posed a hypothetical to the VE based on the ALJ's RFC determination which, as discussed above, was supported by substantial evidence and considered all of Plaintiff's ailments. Specifically, the ALJ asked the VE to assume a person with the same age, education and work experience as Plaintiff and who can occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk with normal breaks for a total of about six hours during an eight-hour workday, sit with normal breaks for a total of about six hours during an eight-hour workday, push and pull including operation of hand and/or foot controls, and is unlimited other than lifting or carrying with postural limitations that would include occasional climbing of ramps, stairs, ladders, ropes and scaffolds, balancing, kneeling, crouching, bending, and crawling. (R. at 52.) Then, the ALJ asked the VE if jobs existed that the assumed person could perform. (R. at 54.) The VE testified that such a person could perform the position of a cashier or mail clerk. (R. at 54-55.) It should further be noted that when the ALJ asked Plaintiff if he had any hypotheticals for the VE, Plaintiff failed to pose any questions. (R. at 55.) Because the ALJ's hypothetical represented all of Plaintiff's impairments — as determined by the ALJ's assessment of Plaintiff's RFC — the testimony of the VE was relevant and the hypothetical was properly posited.

## VI. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's Motion for Summary Judgment (ECF No. 13) and Motion to Remand (ECF No.14) be DENIED; that Defendant's Motion for Summary Judgment (ECF No. 16) be GRANTED; and, that the final

decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable
Henry E. Hudson and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and
recommendations of the Magistrate Judge contained in the foregoing report within
fourteen (14) days after being served with a copy of this report may result in the waiver of
any right to a *de novo* review of the determinations contained in the report and such failure
shall bar you from attacking on appeal the findings and conclusions accepted and adopted
by the District Judge except upon grounds of plain error.**

/s/

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date: April 22, 2013